UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEW MEDIUM TECHNOLOGIES LLC, AV TECHNOLOGIES LLC, IP INNOVATION LLC, and TECHNOLOGY LICENSING CORPORATION, | ) ) ) ) | |
| | ) | Case No. 05-CV-5620 |
| Plaintiffs, | ) ) | Judge Amy St. Eve |
| | ) | |
| v. | ) ) | Magistrate Judge Cole |
| BARCO N.V., MIRANDA TECHNOLOGIES INC., LG PHILIPS LCD, LTD., TOSHIBA CORPORATION, TOSHIBA AMERICA CONSUMER PRODUCTS, L.L.C., and SYNTAX- BRILLIAN CORPORATION, | ) ) ) ) ) ) | **FILED UNDER SEAL** **REDACTED VERSION** |
| | ) | |
| Defendants. | ) | |

REPLY IN SUPPORT OF MIRANDA'S AND BARCO N.V.'S
JOINT MOTION UNDER FRCP 12(b)(1) TO DISMISS FOR LACK OF STANDING

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................. 1

II.   APPLICABLE LEGAL STANDARDS ........................................................ 2

III.  ARGUMENT..................................................................................................... 2

    A.    The Agreements Do Not Transfer "All Substantial Rights."................ 2

        1.                                  ... 2

        2.                                  .... 7

        3.                                  ...... 9

        4.                                  ..... 10

        5.                                  ...... 12

    B.    The Rights of AV and New Medium Are Not Exclusive................................. 12

    C.    AV Cannot Retroactively Amend its Agreement As to the '070 Patent. ............ 14

IV.  CONCLUSION................................................................................................... 15

**REDACTED**

-i-

TABLE OF AUTHORITIES

Page

**Cases**

*Abbott Labs. v. Diamedix Corp.,*
47 F.3d 1128 (Fed. Cir. 1995) .......................................................................2, 10, 11
*Applied Interact, LLC v. Vermont Teddy Bear Co.,*
No. 04 Civ. 8713 HB, 2005 WL 1785115 (S.D.N.Y. July 28, 2005) ...................... 9
*Church & Dwight Co., Inc. v. Abbott Labs.,*
No. 05-2142(GEB), 2006 WL 3000201 (D.N.J. Oct. 20, 2006) ............................... 9
*Crown Die & Tool Co. v. Nye Tool & Machine Works,*
261 U.S. 24 (1923) .................................................................................................. 14
*First Graphics, Inc. v. M.E.P. CAD, Inc.,*
No. 00-C-2524, 2001 WL 755138 (N.D. Ill. June 29, 2001) .................................. 12
*Hay v. Indiana State Board of Tax Commissioners,*
312 F.3d 876 (7th Cir. 2002) .................................................................................... 2
*Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.,*
248 F.3d 1333 (Fed. Cir. 2001) ......................................................................... 3, 10
*Merial Ltd. v. Intervet Inc.,*
430 F. Supp. 2d 1357 (N.D. Ga. 2006) .................................................................... 9
*Minco Inc. v. Combustion Eng'g,*
95 F.3d 1109 (Fed. Cir. 1996) ............................................................................... 14
*Moore v. Southern Independent Oil & Refining Co.,*
61 N.E.2d 684 (Ill. App. Ct. 1945) .......................................................................... 4
*Propat Int'l Corp. v. Rpost, Inc.,*
473 F.3d 1187 (Fed. Cir. 2007) ......................................................... 1, 2, 4, 6, 9, 10, 12
*Sicom Sys. Ltd. v. Agilent Techs., Inc.,*
427 F.3d 971 (Fed. Cir. 2005) ........................................................................... 8, 10
*Speedplay, Inc. v. Bebop, Inc.,*
211 F.3d 1245 (Fed. Cir. 2000) ............................................................................. 11
*Technology Licensing Corp. v. Videotek, Inc.,*
No. C01-04204-CRB, 2003 WL 21939756 (N.D. Cal. June 3, 2003) ...................... 5
*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA,*
944 F.2d 870 (Fed. Cir. 1991) ............................................................................. 3, 9

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 15
Fed. R. Civ. P. 12(b)(6) .............................................................................................. 2
Fed. R. Civ. P. 37 ..................................................................................................... 13

I.     INTRODUCTION

Because they were not granted sufficient rights in the patents-in-suit, AV and New Medium (collectively "Plaintiffs") do not have standing, and their claims should therefore be dismissed. Plaintiffs' responsive papers invest considerable effort in puffing up the Agreements[1] at issue in an attempt to recast them as something other than the "hunting licenses" that they are. But careful analysis of those Agreements makes clear that:

- **REDACTED**

- they are not exclusive, being subject to the pre-existing rights of numerous third parties; and

- **REDACTED**

As will be discussed in detail herein, Plaintiffs are forced to misrepresent, distort, and in some cases simply ignore the contents of the Agreements, the holdings of the Federal Circuit's recent *Propat* decision,[2] and controlling Seventh Circuit and Supreme Court case law barring transferring rights in expired patents in order to attempt to salvage their case. But the law and the facts require that this case be dismissed as to each of the patents asserted by AV and New Medium.

---

[1]    The AV and New Medium agreements, Exhibits 6 and 7 to the Donoghue Declaration (Docket Entry No. 233) accompanying Defendants' opening brief are referred to and cited herein as the "Agreements."

[2]    *Propat Int'l Corp. v. Rpost, Inc.*, 473 F.3d 1187 (Fed. Cir. 2007).

II.   APPLICABLE LEGAL STANDARDS

Plaintiffs misstate the applicable legal standard, erroneously directing this Court to the standards applicable to a Rule 12(b)(6) motion. New Medium's and AV Technologies' Opposition to the Joint Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) [hereinafter "Opposition Brief"] at 4-7. This Court should look beyond the pleadings and consider all competent evidence in order to determine whether plaintiff has met its burden to prove that jurisdiction exists. *See* cases cited at Docket Entry No. 232, Memorandum in Support of Miranda's and Barco N.V.'s Joint Motion Under FRCP 12(b)(1) to Dismiss for Lack of Standing [hereinafter "Opening Brief"] at 3-4; *see also Hay v. Indiana State Board of Tax Commissioners*, 312 F.3d 876, 879 (7th Cir. 2002).

III.   ARGUMENT

A.   **The Agreements Do Not Transfer "All Substantial Rights."**

REDACTED

from the facts of the Federal Circuit's *Propat* decision. *Propat*, 473 F.3d 1187; *see also Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128 (Fed. Cir. 1995) (licensee lacked standing where right to

REDACTED

Plaintiffs'

position is further contradicted by other evidence, such as the fact that the grantors have

**REDACTED**

the Agreements, Pixel Instruments, is still practicing under at least one of the licensed patents.

Plaintiffs' protestations notwithstanding, Defendants' opening brief accurately

**REDACTED**

Agreements that Plaintiffs point to on this issue is the following:

**REDACTED**

Nor is the mere invocation of the words "all of the substantial rights" dispositive — it is axiomatic that in analyzing whether all substantial rights have been transferred, the issue is ***not*** whether the parties used particular magic words such as "license" or "all rights" to characterize the transaction. Instead, "actual consideration of the rights transferred is the linchpin of such a determination." *Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1344 (Fed. Cir. 2001); *see also Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir. 1991) ("[T]he use of the term 'exclusive license' in the

---

[3]    Plaintiffs' dictionary definition of "license" (Opposition Brief at 5) is perfectly consistent with Defendants' position. Undoubtedly the grantors "grant[ed] formal permission for" and "authorize[d]" the "action[s] or practice[s]" that are spelled out in detail in the Agreements. The

[4]    Plaintiffs' appeal to extrinsic evidence and canons of contract interpretation (Opposition Brief at 5) only underscores

**REDACTED**

1988 agreements is not dispositive; what the documents in fact recite is dispositive."). In this

**REDACTED**

not transferred. *See, e.g., Moore v. Southern Independent Oil & Refining Co.*, 61 N.E.2d 684, 686 (Ill. App. Ct. 1945) ("The familiar doctrine of the law of *expressio unius est exclusio alterius*, is particularly applicable here. The expression in a contract of one or more things of a class implies the exclusion of all not expressed."). And even without resorting to canons of interpretation, it is incomprehensible that AV and New Medium, two entities in the business of

**REDACTED**

-4-

# REDACTED

agreements. The Court in *Videotek* noted that the agreement explicitly stated that it was transferring "the right to make, have made, sell, use, lease, or otherwise deal in Licensed Products." *Technology Licensing Corp. v. Videotek, Inc.*, No. C01-04204-CRB, 2003 WL 21939756, at *1 (N.D. Cal. June 3, 2003). Thus, any implication by Plaintiffs that the denial of the motion to dismiss in *Videotek* should influence this Court to hold in favor of Plaintiffs is disingenuous at best.[5] TLC, Pixel and Cooper have drafted licenses expressly addressing the

---

[5]     *Videotek* is further distinguishable in that the licensee, TLC, had unrestricted assignment and sublicensing rights. 2003 WL 21939756 at *1 (quoting the agreement).

REDACTED

An additional factor strongly weighing against Plaintiffs' position is that Pixel Instruments, one of the "Previous Owners" identified in the Agreements, continues to practice under at least one of the covered patents. Pixel's publicly-available website states that its "AD2100" product is "currently on SALE" and that it is covered by U.S. patents 5,202,761; 4,313,135; and RE 33,535. Donoghue Decl. Ex. 1 at 1-2.

REDACTED

While the '135 and '535 patents have expired, the '761 patent remains currently in effect (having issued in April 1993 based on an application filed in May 1991, according to Schedule I of the AV Agreement). That Pixel is practicing one of the patents is strong evidence that the parties to the Agreements did not intend to transfer this right to the grantees. Either that, or Pixel is a flagrant, willful infringer — an unlikely scenario, since willful infringers rarely identify the patents they are infringing on their sales materials.

Finally, this Court should disregard Plaintiffs' frivolous attempt to distinguish *Propat* on the basis that the parties in that case "explicitly contemplated in their Agreement that the Licensor would . . . practice the patent." Opposition Brief at 6 (basing this assertion on a block quote from one of the appellate briefs filed in *Propat*). This brazen attempt to rewrite history directly contradicts what the Federal Circuit actually found in its *Propat* decision:

> The agreement contemplates that Propat will be engaged in licensing and litigation. It does not explicitly address whether Propat enjoys a license to practice the patent. Similarly, *it does not explicitly state whether Authentix retains the right to practice the patent.*

*Propat*, 473 F.3d at 1190 (emphasis added). That Plaintiffs apparently disagree with, or have

**REDACTED**

incorporating them.

but they do *not*, as Plaintiffs assert, cover all of the products-in-suit. For example, Miranda's accused ASD-211i and ASD-231i products (*see* Donoghue Decl. Ex. 2 at MIR005625, MIR005629) are essentially circuit boards[6] which are placed into a housing. *See, e.g., id.* at MIR005600-01 (depicting "Symphonie" housing frames with several circuit board-style products

---

[6]     An image of each product is in the upper right corner of each page. *Id.*

-7-

installed, illustrative of how a frame would look with ASD-211i or ASD-231i products installed). When customers purchase an ASD-211i or an ASD-231i they generally, although not always, purchase a variety of these components which are placed into slots in a housing, such as the Symphonie, which is then appropriately configured for use before the customer receives it. The ASD-211i and ASD-231i could thus be considered

# REDACTED

The Federal Circuit rejected a closely analogous argument in the *Sicom* case, wherein the licensee Sicom was given the right to sue for "commercial," but not "non-commercial," infringement:

> We find unpersuasive Sicom's response that it is not suing Appellees' customers, nor suing for non-commercial infringement . . . . Sicom's focus on the parties in suit is misplaced where this court has established that the intention of the parties to the Agreement and the substance of what was granted are relevant factors in determining whether all substantial rights in a patent were conveyed.

*Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 979 (Fed. Cir. 2005). In other words, the issue is not how the rights conveyed affect or apply to particular litigants in a particular lawsuit.

Additionally, none of the three cases cited by Plaintiffs on the sublicensing issue actually deals with limitations on a licensee's sublicensing rights. *See* Opposition Brief at 8 (citing cases). Cases that do address sublicensing have made clear that sublicensing restrictions can conflict with transferring all substantial rights. *See, e.g., Church & Dwight Co., Inc. v. Abbott*

-8-

*Labs.*, No. 05-2142(GEB), 2006 WL 3000201, at *3 (D.N.J. Oct. 20, 2006) ; *Merial Ltd. v. Intervet Inc.*, 430 F. Supp. 2d 1357, 1363 (N.D. Ga. 2006); *Applied Interact, LLC v. Vermont Teddy Bear Co.*, No. 04 Civ. 8713 HB, 2005 WL 1785115, at *6 (S.D.N.Y. July 28, 2005).

      3.

      Plaintiffs' analysis of the Agreements' treatment of the right to sue misses the point.

# REDACTED

Opposition Brief at 10; *see also* Opening Brief at 9-10 (citing additional cases). Moreover, the

dispositive" in the *Vaupel* case that Plaintiffs rely on. The agreements in *Vaupel* "transferred the right to sue for infringement . . . subject only to the obligation to **inform** [the licensor]." 944

# REDACTED

Plaintiffs further miss the point regarding the licensor's retained ability to participate in

**REDACTED**

These are substantive matters fundamentally affecting the scope of, and even the very existence of, the patent rights. The fact

**REDACTED**

### 4. The Grantors Can Veto any Attempted Assignment by AV or New Medium.

Restrictions on a licensee's right to assign are very significant to the all-substantial-rights analysis. *See* Opening Brief at 11 (citing *Propat*, 473 F.3d at 1191; *Sicom*, 427 F.3d at 979; and *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995)); *see also Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001). Plaintiffs attempt to sidestep this well-established principle by: (1) blatantly misrepresenting what the Agreements say about the ability to assign; and (2) citing easily distinguishable and non-controlling Federal Circuit caselaw. *See* Opposition Brief at 12-13.

As to the first point, Plaintiffs again misrepresent the scope of their rights to the Court,

**REDACTED**

-10-

**REDACTED**

As to the second point, Plaintiffs' cited cases do not help them. In *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000) (cited in Opposition Brief at 12-13), the explicit rationale behind the Court's conclusion was that the licensor's consent to assignments could "not be withheld unreasonably":

> [T]he licensee's inability to assign its interest was a factor important to the holding in *Abbott*. But again the factual differences between Abbott and this case dictate a different outcome. The licensor in *Abbott* had an absolute right to veto any assignment proposed by the licensee, other than to a successor in business. Under the CLA, however, Bryne and Zoumaras's consent to an assignment "shall not be withheld unreasonably."

**REDACTED**

*Abbott*, the Federal Circuit found that the restriction on the right to assign was among the sort "commonly held sufficient" to make the patent owner a necessary party to the suit. The other

**REDACTED**

-11-

case cited by Plaintiffs, *McNeilab, Inc. v. Scandipharm, Inc.*, 95 F.3d 1164 (Fed. Cir. 1996), is an unpublished decision, and thus "has no precedential force." *First Graphics, Inc. v. M.E.P. CAD, Inc.*, No. 00-C-2524, 2001 WL 755138, at *1 (N.D. Ill. June 29, 2001).

# REDACTED

issue before the Court (Opposition Brief at 13) is incorrect and disingenuous. In *Propat* the Federal Circuit stated that while a patent owner's retention of a portion of revenues does not necessarily defeat what would otherwise be a transfer of all substantial rights, the fact that a grantor "retains a substantial share of the proceeds is consistent with . . . retaining ownership rights in the patent." 473 F.3d at 1191. Plaintiffs misleadingly cite only a portion of this language from the *Propat* decision, ignoring the fact that the Federal Circuit cited Authentix's retention of substantial royalties as being inconsistent with a transfer of ownership in the patent.

# REDACTED

**B. The Rights of AV and New Medium Are Not Exclusive.**

In addition to the Agreements' failure to transfer all substantial rights, they also definitively fail to confer exclusive licensee status on AV and New Medium. This issue is significant because a party that lacks all substantial rights, but nonetheless qualifies as an exclusive licensee, has a legally protected interest sufficient to confer co-standing, meaning the patent owner must be joined in the course of the litigation. *Propat*, 473 F.3d at 1193.

AV and New Medium fail to qualify as exclusive licensees for at least two reasons. First, as discussed at length above,            **REDACTED**

is a prerequisite to exclusive licensee status. Opening Brief at 4-5 (citing cases defining exclusive licensee status). This alone prevents AV and New Medium from qualifying as exclusive licensees for standing purposes. Second, even if Plaintiffs had received the right to practice, that right would not have been "exclusive." "Exclusive" licensee status requires that others be denied the right to practice in the licensee's field of use. *Id.* No such exclusivity is

**REDACTED**

Additionally, as noted above, Pixel Instruments is currently practicing the licensed '761 patent. And numerous other pre-existing licensees[8] received the right to practice patents covered by the Agreements well before the AV and New Medium Agreements were executed. Donoghue Declaration Ex. 3 (interrogatory responses of AV and New Medium identifying license

**REDACTED**

_____

[8]

**REDACTED**

filed their second motion. There is no valid explanation for this sandbagging, and, accordingly, Defendants respectfully request the opportunity to file a Rule 37 motion after this motion to dismiss is decided. The motion will seek the recovery of expenses associated with those portions of Defendants' motions and supporting papers dealing with the IP Innovation agreement.

Medium are not exclusive licensees, and do not have an ownership interest sufficient to confer co-standing with the patent owners.

**C.   AV Cannot Retroactively Amend its Agreement As to the '070 Patent.**

With respect to the expired '070 patent, Plaintiffs take the position that AV merely

**REDACTED**

."  Opposition Brief at 14.  This position is untenable for several reasons:

First, the fact that a patentee can sue for past damages, or the notion that this right is transferable pursuant to a valid assignment of an ***unexpired*** patent, does not establish that rights in an ***expired*** patent can be transferred.  *See* Opposition Brief at 5 (citing *Minco Inc. v. Combustion Eng'g*, 95 F.3d 1109 (Fed. Cir. 1996), which dealt with assignment of rights in an unexpired patent).  Plaintiffs have not even attempted to reconcile their position with the U.S. Supreme Court and Seventh Circuit decisions indicating that rights in an expired patent cannot be licensed.  *See* Opening Brief at 14 (citing and quoting cases).  The district court decision from the Western District of Wisconsin cited by Plaintiffs on page 6 of their Opposition Brief obviously is not controlling on this Court, and certainly is not controlling to the extent it conflicts with the Supreme Court and Seventh Circuit decisions.  Moreover, even without taking into account the caselaw explicitly addressing expired patents,  **REDACTED**

.  *See*

*Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24 (1923)  (mere conveyance of right to sue is insufficient to confer standing).

**REDACTED**

[9] Plaintiffs cannot retroactively amend unambiguous terms of the Agreement using canons of contract interpretation. *See* Opposition Brief at 14.

**REDACTED**

substantial-rights analysis, they cannot disavow them when analyzing the impact of the

IV.     **CONCLUSION**

For all of these reasons and for the reasons stated in Defendants' opening brief, movants respectfully request that this Court grant this Fed. R. Civ. P. 12(b)(1) motion, that AV's and New Medium's claims be dismissed with prejudice. Defendants further request the right to move for sanctions upon resolution of this motion, based on Plaintiffs' inexcusably late production of the

**REDACTED**

-15-

Dated: April 20, 2007

Respectfully Submitted,

By: _____ /s/ R. David Donoghue _____

Thomas G. Pasternak
R. David Donoghue
DLA Piper US LLP
203 N. LaSalle Street, Suite 1900
Chicago, Illinois 60601
(312) 368-4000

James M. Heintz
DLA Piper US LLP
1200 Nineteenth Street, NW
Washington, DC 20036-2412
(202) 861-3900

*Attorneys for Defendant Miranda Technologies Inc.*

By: _____ /s/ Daniel J. O'Connor _____
(By permission)

Daniel J. O'Connor
Edward K. Runyan
Baker & McKenzie
130 E. Randolph Drive
Chicago, Illinois 60601
(312) 861-8000

*Attorneys for Defendant Barco N.V.*

-16-