

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NEW MEDIUM TECHNOLOGIES LLC and )
AVAILABLE TECHNOLOGIES LLC, )
IP INNOVATION, LLC and )
TECHNOLOGY LICENSING )
CORPORATION, ) No. 05 C 5620
 )
       Plaintiffs, ) Judge St. Eve
 ) Magistrate Judge Cole
       vs. )
 )
BARCO N.V., MIRANDA TECHNOLOGIES, )
LG PHILIPS LCD, TOSHIBA )
CORPORATION, TOSHIBA AMERICA )
CONSUMER PRODUCTS, L.L.C., and )
SYNTAX-BRILLIAN CORPORATION, )
 )
       Defendants. )

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

The plaintiffs have charged the defendants, including Toshiba Corporation ("Toshiba-Japan") and Toshiba America Corporation ("Toshiba-US"), with infringement of several patents; Toshiba-Japan and Toshiba-US have responded with a counterclaim for a declaratory judgment that they have not infringed the patents-in-suit, and that they are invalid and unenforceable. On March 5, 2007, plaintiffs noticed and served deposition notices pursuant to Fed. R. Civ. P. 30(b)(6) upon Toshiba-Japan and Toshiba-US (collectively "Toshiba"). That precipitated the instant dispute, which appears with increasing frequency given the complexity of modern federal litigation: where should Rule 30(b)(6) depositions of foreign corporations take place. As so often occurs, the parties initially took polar positions, with Toshiba insisting that all the 30(b)(6) witnesses it designated who resided in Japan should be deposed at the American Consulate in Tokyo. With equal inflexibility, the plaintiffs

insisted that all those witnesses be deposed in Chicago.[1]

The plaintiff's salient objection to the depositions taking place in Japan was that the only place they could be conducted was at the American Consulate, which entailed significant and obvious scheduling difficulties, with so many litigants vying for the necessarily limited spaces on the calendar. The plaintiffs also contend that there were significant logistical difficulties in transporting what were described as the very large number of documents that had to be taken to Japan in order to be available for what were described as highly technical and abstruse depositions. Toshiba had a miscellany of objections to Chicago, arguing variously that there was a "presumption" that the depositions should occur in Japan, that the prospective witnesses were too highly placed in the company to be spared for so long a trip and that there was the problem of "serious jet lag." Indeed, if one were to accept Toshiba's description, the jet lag bordered on debilitating. Toshiba proposed that the depositions occur in Osaka and/or Hong Kong.

Perhaps mindful of Emerson's dictum about foolish consistency, the parties (after some judicial prodding) reached a partial and tentative compromise. Six witnesses would be deposed in Irvine – where a Toshiba subsidiary is located – with plaintiff to pay travel costs, with three "technical" witnesses to be deposed in Chicago at the plaintiff's expense. The plaintiff's willingness to travel to Irvine was contingent upon the technical witnesses being deposed in Chicago. Unfortunately, the negotiations broke down on April 27, 2007: Toshiba was irretrievably committed to having the three technical witnesses deposed in Irvine, and the plaintiffs were equally insistent that

---

[1] Despite the fact that plaintiffs decided after filing their initial lawsuit to add a Japanese corporation as a defendant and represented to Judge St. Eve that they would need additional time because of travel to Tokyo for depositions, they now have said that they should not be put to what they describe as the undue burden of deposing nine 30(b)(6) witnesses in Japan.

the depositions had to be in Chicago.[2]

And so we are back to square one. The decision of where a deposition should occur is ultimately an exercise in the vast discretion a district court has in supervising discovery. *Cf. Crawford - El v. Britton*, 523 U.S. 574 (1998); Rule 26(c), Federal Rules of Civil Procedure. "'[D]iscretion denotes the absence of a hard and fast rule.'" *Langnes v. Green*, 282 U.S. 531, 541 (1931). *See also Pruitt v. Mote*, 472 F.3d 484 (7th Cir.2006); *Rogers v. Loether*, 467 F.2d 1110, 1111-1112 (7th Cir.1972) (Stevens, J.), *aff'd sub nom, Curtis v. Loether*, 415 U.S. 189 (1974). Being a range, not a point, discretion allows two decision-makers-on virtually identical facts to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir.1995) *with United States v. Williams*, 81 F.3d 1434 (7th Cir.1996).[3] Or, as Judge Posner has put it, "[t]he striking of a balance of uncertainties can rarely be deemed unreasonable...." *United States v. Bullion*, 466 F.3d 574, 577 (7th Cir.2006). Thus, it is not surprising that each side is able to marshal cases that to some degree support its position. All are fact-intensive; none are outcome-determinative.

---

[2] Despite the fact that Toshiba-Japan is a global giant and the nine, designated 30(b)(6) witnesses have traveled to the United States a total of thirty times in the last 18 months – a fact initially made known after I ordered the defendants to provide the information – Toshiba insists that there is a meaningful distinction between taking a deposition in Irvine and taking one in Chicago, and that a court, if it is to act in a principled fashion, must prefer Irvine as the correct locus of the depositions.

[3] Both cases involved motions for a new trial based on the government's suppression of the same evidence against different defendants, who were members of the El Rukn street gang. In *Boyd*, the district court found that the suppression mandated a new trial. In *Williams*, the court on the same record came to the opposite conclusion. Chief Judge Posner authored both opinions for a unanimous panel, which affirmed the seemingly irreconcilable decisions as within that spectrum of decision-making inherent in the very concept of discretion, saying, "Chief Judge Aspen and Judge Mills might reach opposite results on the same record yet both be operating within the outer limits of their lawful discretion." *Williams*, 81 F.3d at 1440. The clearly erroneous standard is equally tolerant. To constitute clear error, it must strike the court as wrong "with the force of a 5 week old, unrefrigerated, dead fish." *S Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001).

This is not to say that discretionary choices are left to a court's inclination or whim. Those choices must be guided by sound legal principles. Discretion without a criterion for its exercise is, as Justice Frankfurter observed, authorization of arbitrariness. *Brown v. Allen*, 344 U.S. 443, 496 (1953)(Frankfurter, J., concurring and dissenting in part). *See also Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005); *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975);*United States v. Roberson*, 474 F.3d 432, 436 (7th Cir. 2007) (Posner, J.)(An exercise of discretion requires a consideration of the factors relevant to that exercise). *See also* Henry Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747 (1982).

It is only when no reasonable person could agree with the district court's conclusion that it can be said that a discretionary choice is abusive. *See Rivera v. City of Chicago*, 469 F.3d 631 (7th Cir. 2006); *Purtell v. Mason*, 2006 WL 2037254 at *3 (N.D.Ill. 2006)(St. Eve, J.).

## FACTUAL BACKGROUND

This issue regarding the location of the 30(b)(6) depositions arose as long ago as January 6, 2006, when Judge St. Eve granted the plaintiffs' motion to file an amended complaint, which added Toshiba-Japan as a defendant. It is inconceivable that the plaintiffs' highly sophisticated and experienced lawyers, *see* www.niroscavone.com, did not appreciate the scheduling difficulties then; certainly by February 27, 2007, they were cognizant of the situation. On that day, they told Judge St. Eve that they were planning on traveling for depositions in Tokyo, Belgium and Montreal. (*Plaintiffs' Reply*, Ex. 9, at 4). [4]

---

[4] Japan is not a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. Japanese law authorizes a deposition in Japan for use in United States courts only if (1) the witness or party is willing to be deposed, (2) the deposition takes place on United States consular premises, (3) a consular officer presides over that deposition, pursuant either to a letter rogatory issued by
(continued...)

The plaintiffs noticed the 30(b)(6) depositions on March 5, 2007, and inquired about scheduling the Japanese depositions two weeks later, on March 19, 2007. (*Plaintiffs' Motion to Compel*, Decl. of Paul Gibbons). No depositions were taken anywhere until mid-April, and that was in Belgium. By the time the plaintiffs checked on the availability of consulate facilities, the discovery deadline was barely four months away – a brief period in a context of a case like this. At present, there are no rooms available at the United States Consulate in Tokyo before the close of discovery. (Decl. of Paul Gibbons). The facility in Osaka, Japan – which Toshiba has proposed as an alternative site – is available through the end of discovery, beginning June 11, 2007. (*Toshiba Corporation's Opposition*, Decl. of Brett Schlameus).

When the parties appeared before me on this motion on March 22, 2007, Toshiba's Seattle counsel requested an additional week to resolve the matter. By March 28th, however, the defendants had not even taken the initial step of designating their 30(b)(6) witnesses by title or name; indeed, Toshiba was still undecided even as to how many would be involved. I expressed some dismay at the delay and asked Toshiba to promptly make the necessary designations.

A few days later, at a hearing on April 2nd, the defendants offered Hong Kong or Osaka as a compromise location. They argued that this would be ideal because Hong Kong was about a four-hour flight from Tokyo and the witnesses would not suffer the serious jet lag it was insisted they

---

[4](...continued)
a United States court or to a court order that specifically authorizes a U.S. consular officer to take the deposition on notice, and each participant traveling from the United States to Japan to participate in the deposition obtains a "deposition visa." *See* Consular Convention and Protocol, Mar. 22, 1963, U.S.-Japan, art. 17(1)(e)(ii), 15 U.S.T. 768; Fed.R.Civ.P. 28(b); 22 C.F.R. §§ 92.49-92.71; *In re Application for Order Quashing Deposition Subpoenas, dated July 16, 2002*, 2002 WL 1870084, *5 (S.D.N.Y. 2002). Then, the matter of scheduling becomes the problem, and it is not an insignificant hurdle. *See In re Vitamin Antitrust Litigation*, 2001 WL 35814436, *6 (D.D.C. 2001).

would incur in traveling to the United States. The plaintiffs declined the offer, and in response to my question, said that they would pay the witnesses' travel costs to Chicago. Plaintiffs' counsel argued that Hong Kong was an even longer flight for them than to Japan, and expressed grave concern about the volume of documents that he would have to transport. When I expressed some dubiety, counsel explained that the real problem was access to needed documents to be able to effectively depose the "technical" witnesses.

At my instruction, Toshiba revealed on March 30th (in a letter to me and Chicago counsel for plaintiffs) the history of the prospective 30(b)(6) witnesses' travel to the United States during the preceding 18 months. Two of the prospective witnesses, Hiroshi Hashizume and Mamoru Wariishi, had been in the United States a total of thirteen times in the past 18 months: of the latter's ten visits to the United States, four had been to New York with the remainder to Irvine. Mr. Hashizume had been to California twice. Both men, it was disclosed, were scheduled tentatively to be in the United States in the immediate future. Another of the witnesses, Mr. Yujiuchigasaki has been in the United States seven times over the past 18 months with four of those trips being to the District of Columbia. (*See* letter of March 30th from Amy O'Toole to the court and counsel).

However, at the hearing on April 2, 2007, Toshiba's Seattle counsel informed me and counsel for the plaintiffs that the trip was "tentative," and it was anything but certain that they would actually be in the United States in April. (*Plaintiff's Reply*, Ex. 1, at 23). It now appears that these two gentlemen in fact came to the United States on Toshiba business during the second week of April. (*Plaintiff's Reply*, at 8). Neither the court nor the plaintiffs' counsel were made aware of the trip, and no attempt was made by Toshiba to schedule depositions during their stay in the United States. Indeed, when plaintiffs' counsel inquired about them, he was told to await the outcome of the motion

to compel. (*Plaintiff's Reply*, at 1, 8; *Plaintiff's Opposition*, at 2).

This sort of behavior calls to mind the Supreme Court's observation in *Crosby v. Buchanan*, 90 U.S. 420, 457 (1875): "Honesty of purpose prompts frankness of statement." Modern discovery practices seek to facilitate (however haltingly) open, even-handed, and efficient development of the relevant facts so that justice may be achieved and cases decided fairly on the merits. To that end, lawyers have a duty to act in good faith in complying with their discovery obligations and to cooperate with and facilitate forthright discovery. *Cf. In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 342 (N.D.Ill.2005)(collecting cases). Toshiba's response to the inquiry was not faithful to these obligations. It is unclear whether Toshiba's Seattle counsel knew about the trip. If he did, his failure to have informed the court and plaintiffs' counsel is indefensible. In any event, Toshiba is bound by those actions. *Cannon-Stokes v. Potter*, 453 F.3d 446, 449 (7th Cir. 2006); *United States v. Babul*, 476 F.3d 498 (7th Circ. 2007)(Easterbrook, C.J.). If Toshiba did not inform its counsel of the trip, it has no one but itself to blame for the consequences of that omission.

The parties have filed a not insignificant volume of incomplete snippets of hearing transcripts, letters, and emails, which each side tendentiously insists demonstrates their rectitude and cooperation in this matter and the other side's intractability. But a careful reading of the submissions proves only that unreasonableness eludes monopolization and that there has been a series of grudging and limited compromises that have failed to resolve the matter. Ultimately, the parties were even quarreling over the location of depositions of Toshiba's U.S. employees.[5]

---

[5] Hence, it is not entirely clear – especially from excised transcripts – which witnesses are meant by references to "three witnesses who are going to be here in April . . .," "witnesses already in the United States . . .," or "witnesses being produced in California and New Jersey. . . ." (*Plaintiffs' Reply*, Ex. 1, at 43, Ex. 2, Ex. 3).

The motion was finally fully briefed on April 24, 2007. What should have been three briefs turned into five. Each party's final submission provides something of a snapshot of where they are now, but even now, they do not agree as to their respective final positions, let alone what their prior positions were. Plaintiffs contend that defendants offered to bring all nine witnesses to Chicago if the plaintiffs paid *business class* airfare. The plaintiffs explain that because the difference between coach and business class was over $7000 per ticket, they balked at that idea. (*Plaintiffs' Reply*, at 2). Defendants deny that they insisted on business class tickets and contend that throughout they have maintained the same order of preference for deposition locations: Tokyo, Hong Kong, and Irvine, California.

According to defendants, plaintiffs' position was to depose three in Irvine and six in Chicago. Defendants claim their counteroffer was to bring all nine witnesses to Irvine; they call this their "business class/Irvine" compromise offer. (*Toshiba Corporation's Reply*, at 2). Plaintiffs claimed that at one point the defendant offered to bring three to Chicago – a claim emphatically denied by Toshiba. Presumably this "offer" was for plaintiffs to pay business class airfare, which the plaintiffs rejected. According to defendants, they then offered to bring all nine witnesses to Irvine with plaintiffs paying economy fair. But this offer, too, was rejected. (*Id.*). Not so, according to the plaintiffs: no such offer was ever made. But, so divergent and clashing are the parties' versions of their exchanges, it is impossible to know with certainty what offers and counter-offers passed between them and which portions were actually rejected or accepted.

At the hearing on April 25, 2007, the parties appeared to be on the brink of compromise, with the plaintiffs agreeing to pay coach airfare for six of the witnesses to come to Irvine, while the three "technical" witnesses to come to Chicago at the plaintiffs' expense. After consultation with their

counsel over a two day period, Toshiba rejected the compromise.

After a review of the parties' submissions and the relevant factors at play in this dispute, I order that Toshiba:

1) produce the three "technical witnesses" – apparently Messrs. Hashizume, Wariishi and Uchigasaki – for deposition in Chicago, with the costs of coach airfare and reasonable accommodations for Mr. Uchigasaki to be paid by the plaintiffs. Toshiba shall bear all the costs of airfare and accommodations for Messrs. Hashizume and Wariishi;

2) the remaining six depositions shall take place in Irvine, California where Toshiba maintains a large subsidiary and to which its witnesses have traveled extensively over the past 18 months. The costs of coach airfare will be borne by the plaintiffs, and all other costs will be paid by Toshiba.

## ANALYSIS

### A.

As a general rule, a party may unilaterally choose the place for deposing an opposing party, subject to the granting of a protective order designating a different place.[6] *See* Rule 26(c)(2), Federal Rules of Civil Procedure; 8A C.Wright & A. Miller, *Federal Practice and Procedure*, § 2112 at 72-73 (1994); *Adair v. Hunt Intern. Resources Corp.*, 1987 WL 10961, *1 (N.D.Ill. May 13, 1987);

---

[6] Toshiba has not properly moved for a protective order. It dropped a footnote to the final sentence of its opposition brief to plaintiff's motion to compel which says, "Toshiba cross-moves for a protective order." (*Toshiba Corporation's Opposition*, at 15 n.16). That is not a motion. Local Rule 5.3. What is more, Toshiba completely ignores the Federal Rules of Civil Procedure and the case law applicable to a motion for a protective order. *See Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 440 (N.D.Ill. 2006). Instead, it relies entirely on the so-called "presumption" that corporate witnesses are to be deposed at the corporation's principle place of business, and argues it is plaintiff's burden to rebut this presumption. In fact, it is Toshiba's burden to show good cause for a protective order. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir.1994); *Autotech Technologies*, 235 F.R.D. at 440. And, as will be seen, Toshiba has wagered too much on its view of the "presumption."

*Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 628 (C.D.Cal. 2005). In such instances, courts have broad discretion in selecting the locale for a deposition. *Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1365 (7th Cir. 1985); 8A C.Wright & A. Miller, *Federal Practice and Procedure*, § 2112 at 74-75. Courts have often loosely referred to a "presumption" that the deposition of a corporation should be taken at its principal place of business. *See Magnus Electronics, Inc. v. Masco Corp. of Indiana*, 871 F.2d 626, 630 (7th Cir. 1989); *Chris-Craft Indus. Products, Inc. v. Kuraray Co., Ltd.*, 184 F.R.D. 605, 607 (N.D.Ill. 1999); *Zuckert v. Berkliff Corp.*, 96 F.R.D. 161, 162 (N.D.Ill. 1982). This is particularly so when the corporation is a defendant. *Zuckert*, 96 F.R.D. at 162; 7 J. Moore, *et al.*, Moore's Federal Practice ¶ 30.20[1][b][ii], p. 30-36 (3rd ed. 2005).

This provisional preference is not totally inapplicable because Toshiba has counterclaims for declaratory judgment. Counterclaims of non-infringement, patent invalidity, and unenforceability are compulsory in this context, *see* Fed.R.Civ.P. 13(a), *Competitive Technologies, Inc. v. Fujitsu Ltd.*, 374 F.3d 1098, 1100 n.4 (Fed. Cir. 2004); *Morton Intern., Inc. v. Cardinal Chemical Co.*, 967 F.2d 1571, 1573 (Fed. Cir. 1992), a fact that plaintiffs do not dispute. Thus, it cannot really be said that defendants selected this forum, in the sense referred to by the cases. *Zuckert*, 96 F.R.D. at 162. By the same token, the counterclaim is of importance to Toshiba, and it has availed itself of the liberal discovery rules here in the United States. *See Custom Form Mfg. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D.Ind. 2000)(collecting cases).

Toshiba has accorded the "presumption" an almost mandatory quality. But there are varying kinds of presumptions: there is the bursting bubble presumption, the permissive presumption, the mandatory rebuttable presumption. *See United States v. Wurzinger*, 467 F.3d 649, 651 (7th Cir.

2006). Toshiba does not explain which presumption it thinks is in play here, and in the last analysis, it does not matter. Courts have treated the "presumption" with varying degrees of deference. All are agreed that it may be overcome by a showing that "peculiar" circumstances favor depositions at a different location. *See Six West Retail Acquisition v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 107 (S.D.N.Y. 2001). And it can be overcome by a showing that factors of cost, convenience, and litigation efficiency favor holding the deposition outside of the witness' district. *Id.* Some courts have gone a bit farther given the substantial discretion courts have to specify the time and place of any deposition. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1166 (9th Cir. 1994); *In re Standard Metals Corp.*, 817 F.2d 625, 628 (10th Cir.1987); *Fast Food Gourmet v. Little Lady Foods*, 2007 WL 188014, *1 (N.D.Ill. Jan. 23, 2007).

The breadth of that discretion has led a number of courts to characterize the presumption as merely a kind of general rule that "facilitates determination when other relevant factors do not favor one side over the other." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 155 (S.D.N.Y.1997); *see also P.H. Intern. Trading Co. v. Christia Confezioni S.p.A.*, 2004 WL 2538299, *2 (N.D.Ill. Sept. 24, 2004); *Custom Form*, 196 F.R.D. at 336. But this is not a presumption at all. Indeed, it is the antithesis of a presumption. Courts following this line of reasoning have pointed out that "[w]hen a foreign corporation is doing business in the United States, is subject to the court's jurisdiction, and has freely taken advantage of our federal rules of discovery, exceptions to the general rule on the location of depositions are often made." *Custom Form*, 196 F.R.D. at 336 (collecting cases).

Among the more significant factors to which courts often look are whether the time, expense, and inconvenience of travel presents a special hardship for the deponent, *Afram Export*, 772 F.2d

at 1365; *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 629 (C.D.Cal. 2005); and the ability of the court to intervene should disputes arise, *Custom Form*, 196 F.R.D. at 336; *In re Honda American Motor Co., Inc. Dealership Relations Litigation*, 168 F.R.D. 535, 538 (D.Md. 1996).

Obviously, conducting depositions in Japan, over a dozen time zones away and on the other side of the International Dateline, would severely compromise – to put it mildly – the court's ability to intervene should problems arise. This is such a case. Japan is 14 hours ahead of Chicago. Thus, while depositions are going on in Tokyo, Chicago judges – at least most of them – are not conducting judicial business, and the courts are closed. Indeed, it was this time difference that prompted Toshiba's Chicago's counsel to request additional time to consult with Toshiba to see if the dispute could finally be resolved when all that remained was the question of the venue for the three technical witnesses. After all, I was told, "it was the middle of the night in Japan" and thus the client was unavailable for personal consultation. The logistical problems that made consultation with her clients difficult if not impossible are no different for judges who may be required to involve themselves in disputes, the immediate resolution of which would be essential.

Toshiba disputes none of this. Instead, it argues that there have been no discovery disputes thus far, so there can only be speculation as to whether disputes might arise at the depositions. (*Toshiba Corporation's Opposition*, at 4-6). There are three basic flaws in the argument. First, the present dispute belies Toshiba's conclusion that there have been no disputes. Second, while it is impossible to forecast "events still in the womb of time," *Dennis v. United States*, 341 U.S. 494, 551 (1952)(Frankfurter, J. concurring), the wrangling that has gone on so far is a fair predictor of what may come. Third, an antecedent history of contentiousness is a sufficient, but not a necessary basis on which to require a deposition in a locale where judicial supervision will be available. Indeed,

Toshiba's argument could not be more inconsistent with the overarching purpose of the Federal Rules of Civil Procedure, which is to secure the just, speedy and inexpensive determination of every action. *See* Rule 1. If problems arise and judicial supervision is unavailable, the costs would be excessive and the proceedings needlessly dilated. Instead of immediate resolution, there is at least a potential that the parties would return from Japan with issues, the resolution of which potentially could require further depositions with additional trips to Japan with the extraordinary expenditure of time and expense that would be entailed.

"Judges are entitled to approach many empirical issues with a set of prior beliefs based on experience and when the record is silent, they may make decisions based on those priors." *United States v. Babul*, 476 F.3d 498, 502 (7th Cir. 2007)(Easterbrook, C.J.). They are also entitled to use common sense. *Mills v. Healthcare Services Corp.*, 171 F.3d 450, 457 n.5 (7th Cir. 1999). The inescapable reality is that merely because there has not been an extensive history of difficulties in this case does not mean that the inability of a court to intervene should disputes arise may be ignored in assessing the appropriate place for the taking of the 30(b)(6) deposition of a foreign party. Toshiba's nondisclosure of the presence in the United States of two of its 30(b)(6) witnesses does not support its assurance that all will be well and that the unavailability of a judicial officer should be a nonfactor in the analysis. Quite the contrary, Toshiba's conduct favors depositions in Chicago. *See Afram Export*, 772 F.2d at 1365; *Custom Form*, 196 F.R.D. at 337.

## B.

Toshiba's claim of undue burden resulting from jet lag is unpersuasive. Many of the witnesses routinely travel to the United States and thus are far more capable of dealing with the problem than inexperienced travelers. Apart from jet lag being an inevitable feature of modern

travel, there is no meaningful difference between travel from Japan to Chicago and Japan to Irvine, where Toshiba was willing to have all its witnesses deposed, and to where they routinely travel. *Cf. Board of Trustees, Sheet Metal Workers National Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000)(easy air transportation makes it easy these days for cases to be litigated with little extra burden in any major metropolitan area); *Manu International S.A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (2nd Cir. 1981).

Of the nine witnesses designated by Toshiba, at the very least, three are no strangers to *frequent* business travel to the United States, including the District of Columbia and New York. Mamoru Wariishi is senior manager in international sales – a title from which the inference may be drawn that he is likely no stranger to travel to the United States. The inference is supported by the facts: he has been to the United States ten times on business over the last 18 months. (Decl. of Mamori Wariishi). Two trips were to New York, seven were to Irvine, California, and one was to both New York and Irvine.[7] Similarly, Mr. Uchgasaki, the chief specialist for the licensing and contracts department, has been to the United States seven times in the last 18 months. Four of these trips have been to Washington, D.C., but he has also been to California and Seattle, and has on two occasions split a five-day trip between the East and West Coasts. (Decl. of Yuji Uchigasaki). Toshihiko Minato is a senior manager in the products planning department and has traveled to the United States fairly frequently on business of late. In the last 18 months, he has made four trips to California and one to Miami. (Decl. of Toshihiko Minato).

---

[7] Ms. O'Toole's March 30th letter in response to my request for information about travel over the last 18 months reflected that Mr. Wariishi had been to New York 4 times (not 3) for a total stay of 10 days in that city. This number may not quite be exact since one of the trips was apparently split between New York and Irvine.

14

Somewhat less well-traveled, yet not infrequent visitors to the United States are Hiroshi Hashizume, Masanori Inoue, Akira Takei, and Hirotoshi Abe. Mr. Hashizume in the senior manager of the imaging process design department and has made three trips to the United States – two to the West Coast and one to the East Coast – in the previous year-and-a-half. He foresees at least one more trip to the United States in the coming weeks. (Decl. of Hiroshi Hashizume). Masanori Inoue is a senior manager in the intellectual property department. He has traveled to the United States three times in the last 18 months, with two trips to Los Angeles, and one trip to Cleveland and Washington D.C., during which he passed through Chicago. (Decl. of Masanori Inoue). Akira Takei has also made three trips – two to Palo Alto, California and one to Washington D.C. (Decl. of Akira Takei). Hirotoshi Abe, a group manager in the televison and visual media department, has made recent trips to San Jose, California and Las Vegas, Nevada. (Decl. of Hirotoshi Abe).

Less well-traveled are Hirofumi Nishikawa and Takeshi Iwata, who are group managers in PC development. Neither has been to the United States in the last 18 months. (Decls. of Hirofumi Nishikawa and Takeshi Iwata).

In the end, given the recent travel experiences of the nine witnesses, the minimal difference between the duration of a flight from Japan to Irvine, California, and a flight to Chicago, and the international nature of Toshiba's business, Toshiba has failed to show that the time and inconvenience of travel presents a special hardship for the witnesses. *See Afram Export*, 772 F.2d at 1365; *Custom Form*, 196 F.R.D. at 337; *Cadent Ltd.*, 232 F.R.D. at 629. Accordingly, three depositions shall be in Chicago and six in Irvine, California.

That leaves the question of how the expenses should be allocated. Courts have wide discretion in attaching conditions concerning the payment of expenses. 8A C.Wright & A. Miller,

*Federal Practice and Procedure,* § 2112 at 75 (1994); *Spears v. City of Indianapolis,* 74 F.3d 153, 158 (7th Cir. 1996)(considerable discretion in determining whether expense-shifting in discovery production is appropriate in a given case). The plaintiffs originally offered to *split* all expenses of nine depositions in Chicago. (*Plaintiff's Motion to Compel,* at 12-13). Almost immediately thereafter, they agreed to pay the travel costs of the witnesses residing in Japan. (*Plaintiff's Reply,* at 7). As it is the plaintiffs' insistence and for their convenience that the three technical witnesses be deposed in Chicago, it is appropriate that they pay not only coach airfare but the reasonable costs of hotels and meals – except for the two witnesses who were in the United States in April. As to them, Toshiba shall pay all travel costs and other expenses. [8]

In light of Toshiba's willingness to have witnesses deposed in Irvine and in light of its substantial facilities there, Toshiba shall pay the costs of lodging and meals for the six witnesses. Plaintiffs shall be responsible for paying for coach airfare for these witnesses *See P.H. Intern. Trading,* 2004 WL 2538299, *3 (discussing discretion in requiring party taking deposition to pay all costs or apportioning costs between parties); *Custom Form,* 196 F.R.D. at 338 (same).

### C.

Finally, there is the argument of undue burden that is said to result from requiring indispensable senior level employees to leave Japan and travel to the United States to be deposed. Even if one were to ignore the fact that the regularity of their travel to the United States dilutes the claim of indispensability, it does not come with particularly good grace for Toshiba to complain about a situation that it has created. Not surprisingly, claims of burden and prejudice are inevitably

---

[8] It is not entirely clear that these 2 witnesses are "technical" witnesses. If they are not, and thus are being deposed in Irvine, Toshiba is nonetheless responsible for their travel costs, lodging and meals.

rejected when the complaining party is the author of its own dilemma. *Cf. Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)(employer can't complain about inexactitude of damage award where he failed to keep records in accordance with statutory requirements); *United States v. Goodwin*, 449 F.3d 766, 772 (7th Cir. 2006)(Posner, J.)("He was therefore the co-author of the prolongation that is the fulcrum of his Fourth Amendment claim... It is in that sense that he is the author of the delay of which he complains."); *United States v. Cohen*, 145 F.2d 82 (2nd Cir. 1944)(L.Hand, J.); *cert. denied*, 323 U.S. 799 (1945)("It is particularly unreasonable for the accused. . . to complain of that confusion of which they were the authors."). *Cf. R.H. Stearns Co. v. United States*, 291 U.S. 54, 61-62 (1934)(Cardozo, J.)("'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him in effect "this is your own act, and therefore you are not damnified. . . ."'").

Highly placed executives are not immune from discovery, and the fact that an executive has a busy schedule cannot shield him or her from being deposed. *General Star Indemnity Co. v. Platinum Indemnity Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y. 2002); *Six West Retail Acquisition v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001). It cannot be disputed that Toshiba is an international colossus whose business in the United States is an integral component of its overall operations. Part of the cost of doing business in the United States is the responsibility to respond to the orderly demands of litigation, one of which is responding to an appropriate notice of deposition.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel [#257] is GRANTED in part, and DENIED in part.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 4/30/07