| | |
|---|---|
| NEW MEDIUM LLC, AV TECHNOLOGIES, LLC, J. CARL COOPER, PIXEL INSTRUMENTS CORPORATION, IP INNOVATION LLC, and TECHNOLOGY LICENSING CORPORATION, *Plaintiffs*, v. BARCO N.V., and SYNTAX-BRILLIAN CORPORATION, *Defendants*. | No. 05 C 5620 Judge Richard A. Posner Sitting by designation |

# MEMORANDUM OPINION

Before the Court are six motions by Barco for partial summary judgment. I refer to the various plaintiff companies and individuals, and their agents and their predecessors-in-interest, collectively as "Plaintiffs."

**Barco's motion for partial summary judgment of non-infringement of U.S. Patent No. 4,573,070 based on a license to Matsushita [728] is granted.**

Plaintiffs have alleged that Barco's BarcoGraphics 4000 projector, which Barco sold from 2000–2002, infringes their U.S. Patent No. 4,573,070. That projector was manufactured for Barco by Panasonic Corporation, which entered into a license agreement with Plaintiffs in 2005. (Panasonic was at that time known as Matsushita Electric Industrial Co.; the corporation adopted the Panasonic name in 2008.) The agreement "release[d] and forever discharge[d]" Panasonic and "its end-users, distributors, resellers, customers, including OEM customers and private label customers, dealers agents and suppliers . . . from any and all actions,

causes of action, claims or demands whatsoever . . . as to all claims for infringement" of the '070 patent, among others.

Plaintiffs have accepted Barco's submission that the BG4000 projector was manufactured by Panasonic and that the license applies. They therefore do not object to Barco's motion, which is hereby granted.

**Barco's motion for partial summary judgment of non-infringement of U.S. Patent Nos. 4,573,070 and 4,803,547 by reason of the patent exhaustion doctrine [732] is granted in part, and my ruling on it is deferred in part.**

In the early 1990s Plaintiffs entered into two other licensing agreements: one with Sony Corporation and another with Philips Electronics NV. Sony and Philips supplied Barco with integrated circuits that performed comb filtering. Barco contends that pursuant to the doctrine of patent exhaustion, *Quanta Computer, Inc. v. LG Electronics, Inc.*, 128 S. Ct. 2109, 2115 (2008) ("The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item."), the licenses protect it from claims of infringement of U.S. Patent Nos. 4,573,070 and 4,803,547.

On August 8, 2007, this court determined that Plaintiffs could not base a claim of infringement of the '070 patent on Barco's use of Sony circuits. Now Barco has requested that the same ruling be extended to the '547 patent. Plaintiffs do not oppose this request. But Plaintiffs emphasize, and I agree, that when the Sony circuit is used in conjunction with other circuits, a claim of infringement of either the '547 or '070 patents may be proper. The protection that Barco gets from the license extends only to its use of integrated circuits made by Sony.

Plaintiffs do not concede that Barco is entitled to the same protection from the Philips license. That license gave Philips a "non-exclusive right to utilize the inventive features of the Licensed Patents to make, have made, sell, use, lease, or otherwise deal in Licensed Products on which a royalty has been paid hereunder." But the license continues: "[Philips] shall for no purpose be deemed to have acquired any right with respect to the manufacture, sale, or use of . . . [certain] integrated circuits . . . . Provided, however, that Licensor shall not assert any claim against [Philips] with respect to the [integrated circuits]." Plaintiffs pin their argument to the sentence which restricts Philips' rights to integrated circuits, while Barco focuses on the covenant not to sue.

The apparent contradiction between those two sentences is made irrelevant by the "Lump Sum Addendum" to the license. The Addendum provides that Philips will pay a lump sum of nearly $5,000,000 in full satisfaction of its royalty payments. It also states that "[a]ll products manufactured, sold, leased or otherwise used by [Philips] in conjunction with processing video signals shall be deemed to have been made a part of the . . . Schedule of Licensed Products."

Plaintiffs argue that the only function of the Addendum was to convert the stream of royalties into a single payment, and that it left the license's restriction on rights to integrated circuits in place. But the Addendum is explicit that "all products" used for processing video signals "shall be deemed to have been made" part of the schedule of licensed products. If, as Plaintiffs believe, the drafters of the Addendum had intended to leave the original restrictions in place, there would have been no reason to deem other products licensed. The Addendum makes clear that integrated circuits used to process video signals are now licensed products that Philips had an explicit right to "ma[k]e, sell, use, lease or otherwise deal." So Barco's use of Philips circuits is authorized under the Philips license.

On September 29, 2006, Philips sold a majority interest in its semiconductor business to a group of private equity investors, including Kohlberg Kravis Roberts & Co. and Bain Capital. The spin-off became known as NXP Semiconductors. Barco continued purchasing circuits from NXP, but the change in ownership had consequences for the license. The Philips license defines "licensee" to include Philips and "any entity in which [Philips] directly owns a majority interest . . . so long as such majority interest in maintained." Thus, when Philips sold its majority interest in its semiconductor division the license did not transfer to NXP. But Barco believes it has a different defense regarding its use of the NXP circuits. It contends that received no circuits from NXP until after the '070 and '547 patents had expired. Recall that according to both parties' accounts, the earliest that NXP could have begun supplying Barco with allegedly infringing circuits was September 29, 2006. The '070 patent expired on February 25, 2003, so Barco is correct that any use of the NXP circuits could not have infringed that patent. But the '547 patent didn't expire until April 10, 2007, nearly seven months after NXP was formed.

To show that it did not sell projectors with NXP circuits between September 2006 and April 2007, Barco submitted the declaration of one of its employees, Martin Piepers. Piepers stated that Barco did not sell any products using NXP circuits prior to April 10, 2007. He reasoned that since Barco buys its circuits from wholesalers rather than directly from the manufacturer, and those wholesalers would have had a backlog of Philips circuits left to sell as of September 2006, it would have been at least two months, or the end of November, before the wholesalers would have shipped Barco an NXP circuit. But that leaves a five-month window between December and April. To close that window, Piepers asserted that it takes Barco six months to install the circuits into the projectors, test the projectors and then ship them to the United States (Barco is a Belgian company). Tacking Barco's six-month product cycle onto its suppliers' two-month inventory backlog, Piepers estimated that the earliest that Barco could have

shipped or sold a projector with an NXP circuit was the end of May, a safe six weeks past the patent's expiration date. (Piepers' best estimate was that Barco began selling projectors with the NXP circuit in the United States in July or August.)

Plaintiffs do not present any contradictory evidence; instead they rely entirely on the contention that Piepers' declaration is based on inadmissible hearsay and is pure speculation. The argument is premature. The initial problem with the declaration, which must be resolved before the hearsay objection can be decided, is that although Piepers says that he is "employed by Barco," is "familiar with the products Barco has sold, and with Barco's operations generally," and has "personal knowledge of the facts stated in [his] declaration," he never reveals the basis of his personal knowledge. I am left to guess what position within the company he holds (or held during the crucial time period in 2006–07), and the extent of his contact with Barco's wholesale suppliers. Without this information, Piepers' declaration is insufficient.

Barco's motion for partial summary judgment of non-infringement of the '070 and '547 patents is granted in part. Specifically, Barco's use of the Sony and Philips circuits are covered by Plaintiffs' licenses with those companies and did not infringe the '070 and '547 patents. As for Barco's use of the NXP circuits, Barco has ten days from the date of this opinion to supplement Piepers' declaration with information regarding the basis of his knowledge about when Barco would have begun selling projectors with NXP circuits in the United States. Barco must also give Plaintiffs an opportunity to depose Piepers.

**Barco's motion for partial summary judgment of U.S. Patent No. 4,573,070 by reason of the use of Altera FPGA [733] is denied as premature.**

In some of its projectors, Barco used Altera field programmable gate arrays, a special kind of integrated circuit that can be programmed by the user, yielding greater control and lower costs. Stephen D. Brown & Robert J. Francis, *Field-programmable Gate Arrays* 1–2 (1992). This is an important feature because Plaintiffs charge that Barco programmed the Altera circuits to perform noise reduction (noise in this context refers to distortion of the video signal) in ways that infringe U.S. Patent No. 4,573,070.

Barco's defense is that it programmed the circuits by means of a different, non-infringing set of algorithms that also accomplish noise reduction. Because of these algorithms, Barco argues that its Altera circuits are not capable of:

    (1)    comparing one or more pixels/elements with one or more other pixels/elements to determine the difference thereof, or to determine which one is larger;

(2) comparing the difference between pixels/elements with a reference/threshold/reference threshold;
(3) having or setting a threshold to which pixels/elements can be compared; and,
(4) replacing/substituting one or more pixels/elements with any other pixel/element or combination of pixels/elements, or with average values, or with a noise reduced value.

Each of these functions appears as a limitation in one or more of the relevant claims of the '070 patent. In fact, the first function appears in all of them. Barco argues that its Altera circuits do not perform any of these functions and therefore that Plaintiffs' case for infringement fails the "all elements rule," an awkward phrase that simply means that a product does not infringe a patent if it does not embody each limitation (i.e., element) of at least one of the patent's claims. See, e.g., *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1358–59 (Fed. Cir. 2005); *Deering Precision Instruments, L.L.C. v. Vector Distribution Systems, Inc.*, 347 F.3d 1314 (Fed. Cir. 2003) ("To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents."); *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1570–71 (Fed. Cir. 1997); 5A *Chisum on Patents* § 18.03[4][a] (2008), and, for criticism, Qing Lin, "Notes & Comments: A Proposed Test for Applying the Doctrine of Equivalents to Biotechnology Inventions: The Nonobviousness Test," 74 *Wash. L. Rev.* 885, 901–02 (1999). Every element of a claim limits the scope of the patent, so that if the patentee could prove infringement by a product that that did not duplicate every element, he would be expanding the patent's scope. See Joshua P. Larsen, "Liability for Divided Performance of Process Claims After *BMC Resources, Inc. v. Paymentech, L.P.*," 19 *DePaul J. Art, Tech. & Intellectual Property L.* 41, 49–50 (2008).

  The protagonist of the dispute underlying Barco's motion is Ronny Van Belle, a Barco design engineer and the author of the source code used to program the Altera gate arrays. Plaintiffs deposed Van Belle in 2007, and rely upon his statements and diagrams for evidence that the Altera circuits were programmed in an infringing manner. Barco has submitted a declaration that Van Belle gave one year later, in which he stated that none of the Altera circuits perform the functions set out above and briefly described the alternative approach that he programmed them to perform. Plaintiffs contend that Van Belle's declaration contradicts statements he made during his earlier deposition.

  To resolve the dispute will require comparing Van Belle's description, the principal evidence on the record, to the limitations in the patents' claims. So before I can determine whether there are material facts in dispute, that is, whether Van Belle's deposition and diagrams, if construed in the Plaintiffs' favor, could

support a claim of infringement, I must "construct[] the claims to determine [their] scope and meaning." *Id*. at 1322.

Barco's motion for partial summary judgment of the '070 patent by reason of use of the Altera FPGA is therefore denied as premature.

**Barco's motion for partial summary judgment of non-infringement of U.S. Patent Nos. 5,424,780 and 6,870,964 [734] is denied.**

The technology underlying Plaintiffs' claim of infringement and Barco's motion are two computer cards called LiMo (short for line-multiplier) and LiDo (short for line doubler). LiMo and LiDo can be installed in Barco's cathode ray tube (CRT) projectors. Their only purpose is to improve the appearance of television-type signals (a signal with 525 or 625 horizontal lines) processed by the projector. Barco manufactured and tested the cards in Belgium. They were generally sold as a stand-alone product, which U.S. customers could specially request when ordering their projector or could purchase in the aftermarket. In a limited number of projectors, the cards were automatically installed, without needing to be requested.

The fact that the LiMo and LiDo cards were primarily sold as a stand-alone product supports Barco's contention that its CRT projectors were not intended for watching television. The projectors can also receive and project computer signals and non-interlaced RGB component signals, and Barco argues that its primary customers were businesses looking to project these types of signals. When the projector is receiving a signal other than a television-type signal, the LiMo or LiDo card sits idle. But when a television-type signal is received, the projector is programmed to automatically activate the cards to enhance the signal. Barco contends that users can, through an on-screen menu, choose to deactivate line-doubling or line-multiplying feature, but it's hard to see why a user would choose not to utilize the technology, especially since in many instances the user specially purchased the LiMo or LiDo card.

Plaintiffs contend that by virtue of its use and sales of the LiMo and LiDo cards, Barco both directly infringed and induced its customers to infringe U.S. Patent Nos. 5,424,780 and 6,870,964. The '780 patent is unenforceable, so Barco's motion is now narrowed to the '964 patent. For that patent, Plaintiffs have alleged that Barco has infringed claim 10, which describes "[a] method for displaying an enhanced version of an image conveyed by a signal."

Since it performed its manufacturing and testing operations in Belgium, Barco denies that it ever directly infringed the '964 patent in the United States. Recall that the only claim at issue in the '964 patent is a method claim, and "the sale of equipment to perform a process is not a sale of the process." *Joy Technologies v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993). So even if the cards do enable

users to perform the patented method, selling the cards to U.S. customers is not *direct* infringement. To directly infringe, Barco would have had to project television-type signals on the CRT projectors in the United States. Plaintiffs point to a Barco press release from 2001 in which the company announced that it would be launching a new projector at a trade show in Ohio. But the press release predates the '964 patent, which wasn't issued until 2005. And it also doesn't mention the LiMo or LiDo cards, or the projection of television-type signals. There is no genuine issue of material fact as to whether Barco directly infringed the '964 patent—it did not.

Plaintiffs also contend that Barco is liable for inducing its customers to infringe their patent by selling the LiMo and LiDo cards, which the customers could then use to project a television-type signal. 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."). "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (quotations and citations omitted); see also 35 U.S.C. § 271(c) ("Whoever offers to sell or sells within the United States or imports into the United States . . . [an] apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.").

Barco dwells on the fact that "Plaintiffs have no evidence that anyone has actually performed the accused method;" but direct infringement can be proved by circumstantial evidence. See, e.g. *Hilgraeve, Inc. v. Symantec Corp.*, 272 F. Supp. 2d 613, 620–21 (E.D. Mich. 2003); *Lucas Aerospace, Ltd. V. Unison Industries*, L.P., 899 F. Supp. 1268, 1286 (D. Del. 1995); 5 *Chisum on Patents* § 17.03[1] (2008). Here Barco's customers had to purchase the LiMo and LiDo cards specially, and the cards were used only for processing television-type signals. If that use constitutes infringement, then there is enough circumstantial evidence to withstand summary judgment.

But to be liable for *inducement* Barco must have known that it was causing its customers to directly infringe a patent. Barco contends that it was unaware that the '964 patent existed until it was asserted in this case on January 9, 2006. And according to the declaration of Martin Piepers, a Barco employee mentioned above, the last LiMo or LiDo card that Barco sold was in 2005. (Piepers stated that demand for CRT projectors, and thus the LiMo and LiDo cards, had been gradually giving way to demand for liquid crystal display (LCD) projectors since

the early 1990s.) Barco contends, therefore, that it could not have known that it was causing infringement.

Plaintiffs suggest that Piepers' declaration is not trustworthy because he admitted in an earlier deposition that he was "not a salesman" and was not familiar with the marketing names for Barco's products. But more so than Piepers' admissions, it is Barco's list of "Current Products" (as of June 2007), which casts doubt on whether Barco had wrapped up its LiDo and LiMo business in 2005. The list includes the BarcoGraphics 908 projector, and that projector was advertised elsewhere as having an "optional high-quality Line Multiplier (LiMoPro) for improved video image quality." Plaintiffs also argue that even if no sales occurred since 2006, "Barco's support of this infringement continued for years [after 2006] and indeed goes on today." (Screen shots of Barco's web site from 2008 show that Barco continued to promote, though not necessarily sell, its LiDo and LiMo cards.) Plaintiffs' evidence is thin, but taking all reasonable inferences in their favor, there is a material issue of fact as to whether Barco induced infringement after learning about the '964 patent. Barco's motion is therefore denied.

**Barco's motion for partial summary judgment of non-infringement of U.S. Patent Nos. 5,550,594, 5,946,049, 6,141,057, 6,392,707, 6,469,741 and 6,989,869 by reason of the all elements rule [735] is denied as premature.**

Plaintiffs allege that two of Barco's products infringe U.S. Patent Nos. 5,550,594, 5,946,049, 6,141,057, 6,392,707, 6,469,741 and 6,989,869 (the '594 family). The two products are the Encore Presentation System and the ImagePro. Both are signal processors that receive and transmit video signals; they are manufactured at a Barco subsidiary located in California.

Barco argues (again under the "all elements rule") that its products do not perform every limitation of the asserted claims, and therefore do not infringe any patent in the '594 family. It relies principally on the declaration of John Alonso, a director of research and development at its California subsidiary. Plaintiffs disagree and base their arguments on the declaration of J. Carl Cooper, a plaintiff in the case, and instruction manuals and other literature concerning the two products.

Barco's motion centers on whether its products perform the limitations set forth in the claims within the '594 patents. Resolving the motion will first require construing the relevant claims, and Barco's motion is therefore denied as premature.

**Barco's motion for partial summary judgment on the defenses of laches and estoppel [793] is granted in part.**

Barco has moved for partial summary judgment on the defense of laches for U.S. Patent Nos. 4,573,070, 4,803,547 and 5,424,780, and on the defense of estoppel for the '070 patent. On October 16, 2008, I declared the '780 patent unenforceable for inequitable conduct, so Barco's motion is now moot with regards to that patent. That leaves the '070 and '547 patents.

"[L]aches may be defined as the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time or other circumstances, causes prejudice to the adverse party and operates as an equitable bar." *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1028–29 (Fed. Cir. 1992) (en banc). "A presumption of laches arises where a patentee delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity." *Id*. at 1028. If applicable, the presumption would eliminate Barco's duty to prove that Plaintiffs' delay was unreasonable and that Barco was prejudiced by it. For the presumption to be applicable, the Plaintiffs had to have known or should with reasonable diligence have known of Barco's allegedly infringing activity prior to September 29, 1999.

According to Barco, the Plaintiffs (and their agents) raised concerns about infringement of the '070 patent in 1993 and of the '547 patent in 1997. Plaintiffs do not deny that there was some communication as early as 1993, but characterize it as merely requests for technical information, a necessary first step before any concerns about (or knowledge of) infringement can arise. Plaintiffs assert that the first allegation of infringement of the '070 and '547 patents was in January 1997. In either case, both parties appear to agree that Plaintiffs were aware of the activity that they believe infringes their patent more than six years prior to filing suit.

But that is not enough for the presumption to click in. Laches is a defense only when the plaintiff's delay has been unreasonable. It is not unreasonable to postpone litigation when a plaintiff believes that he is working out a non-litigious solution with his opponent, and the Plaintiffs' principal claim is that the six-year countdown stopped when they began negotiating a license agreement with Barco. According to the Plaintiffs, the two sides engaged in more than seven years of license negotiations, beginning in January 1997 and finally falling apart in October 2004. So, they say, their failure to bring suit until September 2005 should be excused because they were postponing suit in hopes that the two sides could work out something out.

"The general rule is that license negotiations do not necessarily push back the running of time in a laches defense. For such tolling the negotiations must ordinarily be continuous and bilaterally progressing, with a fair chance of success, so as to justify significant delays." *A.C. Aukerman Co. v. Miller Formless Co.*, 693 F.2d 697, 700 (7th Cir. 1982) (citations omitted). To show that the negotiations

were earnest and productive, Plaintiffs say that they were "determined about pursuing a license agreement with Barco" and mention that 86 letters were exchanged between the parties. But there is no evidence that Barco shared Plaintiffs' interest in negotiating. Barco's normal response was to ignore Plaintiffs' inquiries. When it did respond, Barco consistently maintained that its products did not infringe Plaintiffs' patents and that it was not interested in paying for rights that it didn't think it needed. A plaintiff cannot make an unreasonable delay reasonable by continuously harassing the defendant with letters requesting payment. This is not a case in which the defendant strings the plaintiff along, only to turn on a dime and assert the defense of laches as soon as the clock has run out. Plaintiffs have not presented any evidence for why they had a reasonable belief that a non-litigious solution was possible, much less probable.

Plaintiffs also argue that their delay should be excused because the ownership of the relevant patents ('070 and '547) had become uncertain between 1999 and 2001. Again, it's true that a plaintiff's delay may be excusable when he is occupied in clearing title to his patent, because title is a necessary prerequisite to bringing suit for infringement. *Maloney-Crawford Tank Corp. v. Rocky Mountain Natural Gas Co., Inc.*, 494 F.2d 401, 404 (10th Cir. 1974). But the evidence in the record, particularly letters from the Plaintiffs to Barco's attorney, shows that the Plaintiffs never believed that their ownership was in question or that any other litigation stood in the way of their pursuit of Barco. In one letter, Plaintiffs' lawyer specifically says that the ownership dispute was resolved in May 1999, which is more than six years before Plaintiffs filed suit. So this excuse fails, too.

The presumption therefore remains intact, and so Barco may assert the defense of laches without demonstrating that it was prejudiced. But this does not mean that the defense of laches is valid for every product that is alleged to have infringed the '070 and '547 patents. Barco claims that it has used noise reduction and comb filter circuitry for many years, and both sides appear to agree that its products have changed over time. Because a patent owner must have actual or constructive knowledge of the alleged infringement for the laches clock to start ticking, the question is whether the clock started for all products in 1997 (construing disputed facts in the Plaintiffs' favor) or whether it started anew for each new product.

For distinct products to be on the same clock they must be "the same or similar." *Symantec Corp. v. Computer Assoc. Int'l, Inc.*, 522 F.3d 1279, 1295 (Fed. Cir. 2008). Barco does not claim that its products, at least the ones that allegedly infringed the '070 and '547 patents, remained the same or similar after 1999. In fact, neither party has provided any detail about how the products changed (or didn't). Instead, Barco claims that all of its products should be on the same clock because Plaintiffs' initial allegations of infringement were broad and "[were] not

dependent on any particular type of noise reduction or any specific adaptive comb filter." I understand Barco's theory to be that if a patent owner makes a blanket statement that the use of certain technologies (here "noise reduction" and "adaptive comb filters") infringes his patent, then he is on notice of any subsequent product that uses these technologies, even if later products are substantially different than the ones that existed when the patent owner raised his concern. I disagree that Plaintiffs' blanket statements about infringement removes the requirement that products must be similar to be on the same clock. In the context of an emerging patent dispute it may often be the case that the patent owner does not have enough information to attach his general warnings to specific products. A patent owner may make a broad rather than specific allegation *because* he is not yet knowledgeable about the alleged infringer's products.

I have no way to evaluate whether the products Barco made after September 1999, the time at which the presumption took hold, were similar to the products made before. Therefore the presumption of laches does not apply to products made after 1999. For these products Barco has to demonstrate that Plaintiffs' delay was unreasonable and that it suffered prejudice. The record of both is insufficient for summary judgment, and thus Barco's motion is denied with respect to products released after September 26, 1999.

But we must consider Barco's defense of estoppel to the claim of infringement of the '070 patent. An alleged infringer can invoke the defense of estoppel if the patent owner represented that he would not enforce his patent and the alleged infringer reasonably relied on that representation. See, e.g., *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371 (Fed. Cir. 2001); *A.C. Aukerman v. R.L. Chaides Construction Co.*, *supra*, 960 F.2d at 1028.

Barco believes that Plaintiffs should be estopped to allege infringement of the '070 patent by a representation made by one of the Plaintiffs' lawyers in December 1997. That lawyer wrote:

> With respect to the ['070] license, I refer you to my correspondence of November 6, 1997 where I indicated that Barco's practice of the claims protected by those Patents was no longer an issue. As such, any further discussion regarding those Patents or the documents under which they were licensed to other parties will only serve to impede resolution of the only issue currently separating TLC and Barco: the infringement of the '547 Patent.

According to Barco, the lawyer's statement that infringement of the '070 license "was no longer an issue" confirmed that Plaintiffs would not be enforcing the '070 patent, especially since it didn't hear anything else about the '070 patent for almost four years. But the November 6 letter to which the lawyer refers undermines Barco's reading. That letter indicates that the lawyer's statements per-

tained only to Barco's use of a Sony circuit, which was covered by a license. Specifically, the letter states that "BARCO would be covered by the ['070] License Agreement with Sony if the infringing circuitry found in the named BARCO products (1) infringes the ['070 patent] and (2) is implemented by Sony [integrated circuit] components licensed under the '070 and '091 Patents." Making reasonable inferences in the non-moving party's favor, the December 1997 letter did not represent that Plaintiffs would not be enforcing the '070 patent.

In sum, Barco's motion for partial summary judgment on the defense of laches is granted as to the '070 and '547 patents for products released prior to September 29, 1999. The motion is denied with respect to products that were released afterwards and to the defense of estoppel.

So Ordered.

*Richard A. Posner*

United States Circuit Judge,
Sitting by designation

March 18, 2009